IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 07-235 (JDB) |
| | : | |
| KEVIN QUATTLEBAUM and | | |
| GIOVANNI ENRICO WILLIAMS: | | |

JOINT MOTION TO SUPPRESS TANGIBLE EVIDENCE

Defendant Giovanni Enrico Williams, through undersigned counsel, and acting on behalf of himself and his codefendant Kevin Quattlebaum,[1] respectfully requests that this Court suppress the tangible evidence found inside the vehicle in which both Defendants were traveling on August 17, 2007, as well as any evidence seized from their persons. As grounds therefore, Defendant states:

1. Both Defendants are charged in a single count indictment alleging that on August 17, 2007 in the District of Columbia, both men possessed with intent to distribute 50 grams or more of cocaine base, also known as crack. Trial is currently set for November 26, 2007.

2. The government's evidence as presented at the preliminary hearing and through the discovery provided to date indicates the following. On August 17, 2007 at around 4:20 p.m. undercover officer "H.D." observed both Defendants standing in the

---

[1] At a status hearing held on October 10, 2007, Judge Kollar-Kotelly, to whom the case was assigned at the time, directed that "(u)nless counsel indicate otherwise, the Court will assume all Defendant motions are joined by both Defendants." Counsel for both Defendants have agreed that undersigned counsel would assume responsibility for preparing the motion to suppress tangible evidence.

1

1100 block of 19th Street, N.E. The officer did not see either man engage in any transactions between themselves or with any third person. Both men then got into a Ford F-150 pickup truck belonging to Defendant Quattlebaum. Defendant Williams got into the driver's seat. The undercover officer claimed to have passed the truck and seen both men counting money, but he did not observe any exchange between the men.

 3. Defendant Williams then started the truck and began to drive north on 19th Street. Another undercover officer, "W.E.," followed the truck. He claimed that at the intersection of 19th Street and Lyman Place, Defendant Williams made a left turn without signaling. This alleged traffic violation provided the pretext for a stop of the vehicle by other narcotics officers. Those officers, Sgt. Gerald Neill and Lt. Ron Wilkins, claimed to have smelled the "faint-to-moderate" odor of burnt marijuana from within the passenger compartment. Neither of the undercover officers had seen either Defendant smoking anything prior to the stop of the truck.

 4. The police narrative is a little vague at this point. It appears that after the police claimed to have smelled the burnt marijuana both men were "detained" but not arrested. Instead the police, based upon the alleged smell of marijuana, conducted a search of the truck. In the passenger compartment they found an estimated 188 grams of suspected cocaine base inside a shoe which was, in turn, inside a "Prada" plastic bag. The police also found a digital scale with "trace amounts of white powder," some other shoes and shirts, and numerous papers associated with Defendant Quattlebaum.

 5. At some point, presumably after the police discovered the suspected drugs, both men were arrested. A search of Defendant Quattlebaum produced $296.00 and a

search of Defendant Williams produced $1,786.00, some cellular telephones and some papers in his name.

6. Both Defendants seek the suppression of the tangible evidence recovered from inside the truck as well as off their persons. In particular, Defendants assert that:

a. There was no basis to stop the truck as they deny that a traffic violation occurred.

b. That even assuming the traffic stop was lawful, there was no probable cause to search the truck as they deny there was any smell of marijuana.

c. That even if there was a faint odor of marijuana, there was no probable cause to search the truck under the circumstances of this case where neither Defendant was seen smoking anything either prior to entering the truck or while inside the truck, and

d. That there was no probable cause to arrest either Defendant until after the suspected drugs were found, such that any evidence discovered during a search of their persons would be fruits of the search of the truck, which they contend was unlawful.

WHEREFORE, for the above reasons, Defendant respectfully requests that this Court suppress the tangible evidence found inside the vehicle in which both Defendants were traveling on August 17, 2007, as well as any evidence seized from their persons.

                Respectfully submitted

                      /s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant Williams

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 07-235 (JDB) |
| | : | |
| KEVIN QUATTLEBAUM and | | |
| GIOVANNI ENRICO WILLIAMS: | | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION TO SUPPRESS TANGIBLE EVIDENCE

1. The Fourth Amendment protects "houses, papers, and effects" from unreasonable searches and seizures. This includes motor vehicles, *United States v. Maple*, 348 F.3d 260, 261 (D.C. Cir. 2003) (citing *Preston v. United States*, 376 U.S. 364, 366-367 (1964) and *New York v. Class*, 475 U.S. 106, 114-115 1986)).

2. As legitimate occupants of the truck, both men had "standing"[2] to challenge the stop of the truck, *Brendlin v. California*, ___ U.S. ___, 127 S.Ct. 2400 (2007). The government can point to no observations of unlawful activity by either man prior to the stop of the truck, thus the stop would only be valid if, as the police assert, Defendant Williams made a left turn without signaling. Defendants deny this violation, a factual dispute that the Court must resolve. To the extent that the stop was unlawful, as Defendants assert, then they would also have standing to challenge the search of the

---

[2] Although the Supreme Court frowned on the use of the word "standing" in *Rakas v. Illinois*, 439 U.S. 128 (1978), preferring instead to focus on the requirement that a criminal defendant prove a legitimate expectation of privacy as a prerequisite to challenging asserted unlawful police conduct, courts and parties continue to use the term "standing" as a shorthand for this inquiry. *See, United States v. Sanchez*, 943 F.2d 110, n.1 at 113 (1st Cir. 1991).

5

truck as a direct result of the stop, *Id.*

3. Even if the traffic stop were lawful, both men would have standing to challenge the search of the truck. Defendant Quattlebaum as the owner of the truck had a "property interest" in the truck and Defendant Williams as a legitimate driver of the truck had a "possessory" interest in it.[3] *Compare, Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (mere passenger lacked either property or possessory interest in the vehicle.)[4]

4. It does not appear that either Defendant was arrested at the time of the stop. Although the Fourth Amendment does not forbid a custodial arrest for even a minor traffic violation, *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), such authority is conferred by statute as opposed to the common law, *Id.*, at 343-344. In the case of the District of Columbia, the pertinent law, D.C. Code §§ 23-581 (a)(1)(D) and (a)(3), authorize law enforcement officers to make warrantless arrests only for certain more serious traffic offenses - improper signaling is <u>not</u> among them.

5. Defendants assert that there was no smell of marijuana in the truck, noting that

---

[3] Defendant Williams, even as a legitimate driver of the truck, might not have had standing to challenge the search of locked or secret compartments in the vehicle, *see, United States v. Lochan*, 674 F.2d 960 (1st Cir. 1982) (defendant was driving car with owner as passenger but had no standing to object to discovery of drugs found, during an inventory search, in hollow spaces behind the spare tire and behind the plastic panels on the doors and the back of the front seats.) However, in such cases, the completely separate issue arises as to whether knowledge, and hence possession, can be attributed to the defendant. *Compare, United States v. Lochan, supra. with Smith v. Maryland,* 805 A.2d 1108 (Md. App. 2002) (discussing when nexus of contraband to passenger might outweigh imputation of knowledge to driver.)

[4] The Court in *Rakas v. Illinois, supra.*, also posited that a passenger might have standing to challenge a search of a vehicle if he or she had an interest in the property seized. Defendant Williams has, of course, an interest in the items seized from his person; he makes no claim of an interest in the other items seized from the truck. The issue as to whether Defendant Quattlebaum had an interest in the items seized is a more complex question. While he denies any interest in the drugs themselves, he certainly has an interest in the papers and photographs attributable to him. The parties are attempting to coordinate forensic tests on some of the other items in the truck, and so would reserve on this issue as to those items.

the police found no evidence of marijuana during the search of the truck. This Court must first resolve this factual issue, because in the absence of the smell of marijuana, Defendants assert that there was no probable cause to search the truck, nor to arrest them.

      6. Even if the Court finds there was a faint smell of burnt marijuana, Defendants assert that fact would not have given the police probable cause to arrest them. They assert that neither of them had been smoking marijuana in the truck or on the scene. Moreover, the police did not observe the Defendants smoking anything during the time they were under observation. Nor did the police observe either Defendant inside truck prior to them getting into the truck as observed by undercover officer H.D. Thus, even if <u>someone</u> had previously smoked marijuana inside the truck, there was no probable cause to believe either Defendant had done so, much less both of them.  Although the police do not appear to claim that Defendants were under arrest prior to the discovery of the suspected drugs, the point is nonetheless significant. If the police lacked authority to arrest Defendants for the alleged minor traffic violation and also probable cause to arrest them for possession of marijuana based solely upon the faint smell, then the search of the interior of the truck cannot be justified on the basis of the doctrine of *New York v. Belton*, 453 U.S. 454 (1981), which allows the police to search the interior of a vehicle <u>after</u> a custodial arrest of one of the occupants.

      7. Assuming the Court finds both a lawful traffic stop and the existence of a "faint to moderate" odor of burnt marijuana, the critical issue becomes whether the smell of marijuana provides probable cause to search the truck. Defendants concede

7

that the weight of authority seems to support the principle that the smell of burnt marijuana will provide probable cause to justify the search of the passenger compartment of a vehicle.[5] *See, United States v. Turner*, 119 F.3d 18 (D.C. Cir. 1997). *Accord, United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973). Nonetheless, under the particular circumstances of this case, Defendants assert that the faint smell of burnt marijuana did not provide the required probable cause.

8. Defendants would first note that the police claimed to have smelled burnt marijuana, not "raw" marijuana. As the court in *United States v. Downs*, 151 F3d 1301, 1302 (10th Cir. 1998) observed, "the smell of burnt marijuana is generally consistent with personal use of marijuana in the passenger compartment of an automobile." Therefore, instead of a hidden "stash" of drugs, the best the police could have expected to find was an individual amount of marijuana or perhaps a not yet completely consumed marijuana cigarette. Second, Defendants note that the police observed no other indicia of marijuana use in the truck. *Compare United States v. Turner, supra.* (in addition to smell of burnt marijuana, police observed torn cigar papers and a ziplock bag of green weed material.) Third, the police described the odor as "faint to moderate," indicating the likely passage of some time between the presumed smoking of marijuana and the stop of the truck. *Compare, United States v. Loucks*, 806 F.2d 208, 211 (10th Cir. 1986) (defendant "reeking" of marijuana).

---

[5] This is not necessarily true for the search of the trunk of an automobile. *Compare, United States v. Neilsen*, 9 F.3d 1487 (10th Cir. 1993) (no probable cause to search trunk) with *United States v. Loucks*, 806 F.2d 208 (10th Cir. 1986) (probable cause to search trunk found).

9. Defendants submit that the fact that most distinguishes their case is the lack of physical nexus between the Defendants and the truck prior to their entering the truck. In virtually all of the cases which uphold probable cause to search a vehicle based upon the smell of marijuana, the vehicle was continuously occupied by the defendants from the time the police first observed the vehicle until they stopped it. This, in turn, makes it more likely that the occupants were the ones smoking the marijuana and more likely, that if additional evidence of the marijuana use still exists, it would still be in the vehicle. In contrast, the police saw the truck in this case was unoccupied before Defendants entered it. The police did not observe either Defendant smoking marijuana, or anything for that matter, either prior to entering the truck or while inside the truck.[6] Therefore it is likely that whoever smoked the marijuana earlier had exited the truck prior to the police observing it, and further, based upon the faint smell, it was probably some time earlier. There was simply no probable cause to believe that any evidence of marijuana smoking would still be found in the truck.

10. For all of these reasons, Defendants submit that the evidence seized from the interior of the truck and off their persons should be suppressed.[7]

---

[6] Interestingly, the police apparently do not claim to have smelled the odor of marijuana on the <u>persons</u> of Defendants.

[7] Defendant Quattlebaum gave a statement to the police while in custody; Defendant Williams did not. Defendant Quattlebaum's statement would arguably be the product of an unlawful arrest if the search of the truck were unlawful; however, he remains undecided as to whether to seek suppression of the statement (it is not unequivocally incriminating), and would reserve the right to include statement in the evidence he desires to suppress should the Court otherwise grant Defendants' motion.

        Respectfully submitted

            /s/

Richard K. Gilbert
Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004
(202) 898-0857
(202) 544-0024 (fax)
rkgesq@juno.com

Attorney for Defendant Williams

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :
                            :
         v                  :         Crim. No 07-235 (JDB)
                            :
KEVIN QUATTLEBAUM and
GIOVANNI ENRICO WILLIAMS:

<u>ORDER</u>

Upon consideration of Defendants' Joint Motion To Suppress Tangible Evidence, and the Opposition of the United States, it is this ____ day of _____, 2007

ORDERED

That the Motion is hereby GRANTED and that the evidence seized on August 17, 2007 from the persons of the Defendants and from the truck in which they were riding shall be SUPPRESSED.

_____
JUDGE