IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO: 07-235 (JDB) |
| | : | |
| KEVIN QUATTLEBAUM, | : | |
| GIOVANNI WILLIAMS, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S RESERVATION OF RIGHT TO INTRODUCE CONDUCT BY DEFENDANT QUATTLEBAUM AND SUPPLEMENT TO NOTICE OF EXPERT TESTIMONY**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully notifies this Court and the defendants that it reserves the right to introduce evidence of conduct by Defendant Quattlebaum that might be characterized as Federal Rules of Evidence Rule 404(b) evidence, though not in its case in chief, and pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) of additional testimony it may elicit from an expert witness, Metropolitan Police Department Detective Anthony Washington.

**Factual and Procedural Background**

On August 17, 2007, Metropolitan Police officers stopped a vehicle driven by Giovanni Williams and registered to Kevin Quattlebaum after the driver made a left turn without signaling as required by District of Columbia law. Defendant Quattlebaum was a passenger in the vehicle, a 2005 Ford F-150 truck. Prior to the stop, an officer had observed the defendants handling what appeared to be a large amount of currency while they were inside the vehicle. Police officers subsequently discovered a large amount of cocaine base in the vehicle. Searches incident to the

arrests of the defendants revealed that defendant Quattlebaum had about $300 on his person; defendant Williams had $1786 on his person.

The defendants were indicted on charges of Possession with the Intent to Distribute Cocaine Base. Trial is scheduled to begin on November 26, 2007. The government has provided discovery including, pursuant to Federal Rule of Evidence 16(a)(1)(G), a summary of the expected testimony of a drug trafficking expert, Detective Washington. Subsequently, the government became aware of an incident involving defendant Quattlebaum's possession of a large amount of cash.

On November 19, 2007, an investigator with the United States Attorney's Office met with Mohammed Khaliq, a senior sales consultant of CarMax in Laurel, Maryland. Mr. Khaliq identified himself as the individual who in early April 2007 sold Mr. Quattlebaum the 2005 Ford F-150 truck. Mr. Khaliq stated that he recalled the transaction, in part because of Mr. Quattlebaum's method of payment. Mr. Quattlebaum paid for a portion of the $31,000 truck with loan proceeds and trade-in value from another vehicle, but he also provided Mr. Khaliq with a brown paper bag filled with unorganized United States paper currency which Mr. Quattlebaum represented was $9000. Mr. Khaliq instructed Mr. Quattlebaum to go to the cashier to exchange the money in the bag, and Mr. Quattlebaum did so. As a result, Mr. Quattlebaum was able to fully finance the purchase of the $31,000 truck.[1]

## Notice of Reservation of Right to Introduce Evidence

The government, having previously provided defense counsel with information and copies of physical evidence concerning the incident and with notice of the intent to elicit

---

[1] The government has previously provided some discovery concerning Mr. Quattlebaum's interactions with CarMax. Attached at Exhibit A are additional relevant documents.

additional expert testimony at trial concerning the relationship between drug trafficking and the accumulation of large amounts of cash, provides formal notice to the Court and counsel pursuant to Fed. R. Evid. 16(a)(1)(G) that previously designated drug expert Detective Anthony Washington would testify that narcotics distributors frequently deal with large amount of cash in the course of selling and purchasing narcotics. Should the defendants through cross-examination, argument to the jury (including opening statements), or extrinsic evidence, indicate a one-off or legitimate basis for the possession of the cash confiscated in this case, he would further testify that narcotics traffickers must disguise their profits so as not to alert any authorities to the method by which they obtained these profits, that cash transactions in amounts less than $10,000 do not need to be reported to authorities, and that narcotics traffickers generally avoid cash transactions exceeding $10,000, in part because of these requirements.

Further, should the defendants open the door through cross-examination, argument to the jury (including opening statements), or extrinsic evidence, indicate a one-off or legitimate basis for the possession of the cash confiscated in this case, the government reserves the right to argue to the Court that it should be permitted to introduce extrinsic evidence of the CarMax transaction described above in order to rebut those contentions.[2]

If the Court considers such evidence to be 404(b) evidence, the government would note that it is well established that possession of large amounts of cash is common among drug traffickers and is probative evidence on the issue of intent to distribute narcotics. See United States v. Smart, 98 F.3d 1379, 1391 & n.15 (D.C. Cir. 1996) (expert lawfully testified about large amount of cash as part of modus operandi of drug distribution); United States v. Washington, 12

---

[2] The government learned of the additional information concerning Mr. Quattlebaum and CarMax in the early afternoon on November 19, 2007. The government informed the Defendants that it intended to file a 404(b) motion

F.3d 1128, 1137 (D.C. Cir. 1994) (large quantity of cash supported sufficiency of evidence in possession of intent to distribute case);.United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990) (intent to distribute narcotics supported by possession of $576, a "relatively large amount of cash")  In the instant case, the government alleges that the defendants jointly were in constructive possession of about 180 grams of cocaine base.  It is the government's theory that the defendants were working together to distribute the drugs and to profit off that distribution.  Evidence at trial will include testimony that they were observed inside the vehicle counting money prior to the truck's stop, and that when searched they collectively had more than $2000 in total on their persons. Evidence that four months earlier Defendant Quattlebaum was in possession of $9,000 is probative to demonstrate that his contact with the currency recovered in this case was not an accident or was legitimate, but was a knowing and deliberate attempt to continue to be involved in narcotics distribution.

Arguably, the above described evidence is not subject to a Rule 404(b) analysis in that possession of large amounts of currency in itself does not constitute a criminal act or misconduct. We recognize however that the evidence, in the context of the instant case, might support the inference that defendant Quattlebaum's use of $9,000 in cash to purchase an automobile was a deliberate attempt to avoid mandated I.R.S. reporting requirements applicable to cash transactions in the amount of $10,000 or greater.  Even if considered evidence of prior uncharged bad acts, evidence of the CarMax transaction would be admissible also under Fed. R. Evid. 404(b) and 403.

Rule 404(b) is a rule of inclusion rather than exclusion.  "[A]lthough the first sentence

---

in the late afternoon on November 19, 2007.

of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character." United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc), cert. denied, 525 U.S. 1149 (1999); United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984) ("[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404:  a man who commits a crime probably has a defect in character; a man with such a defect of character is more likely than men generally to have committed the act in question.").  Permissible purposes include – but are not limited to – proof of intent, motive, opportunity, plan, knowledge, identity, or absence of mistake or accident, United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.), cert. denied, 498 U.S. 825 (1990), and corroboration of other evidence, United States v. Bowie, 232 F.3d 923, 933 (D.C. Cir. 2000).

> Other crimes evidence should be admitted if the following three criteria are met:
>
> 1) the evidence of other crimes or acts is relevant in that is has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401; 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act [citations omitted].

Bowie, 232 F.3d at 930 (emphasis added).

Inasmuch as this other evidence is probative, it should be admitted unless its probative value is substantially outweighed by its prejudicial effect.  Fed. R. Evid. 403.  Although the other evidence implicates narcotics distribution, it is not unfairly prejudicial.  See, e.g., United States v. Gartmon, 146 F.3d 1015 (D.C. Cir. 1998) (affirming admission of evidence that the defendant, charged with fraud, had placed gun in wavering coconspirator's vagina and threatened her).

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value. [citation omitted].

Id. at 1020.

The law in this Circuit is clear that in balancing the probativeness and prejudice of other crimes, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982) (quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978)); see also United States v. Douglas, 482 F.3d 591, 600 (D.C. Cir. 2007) (upholding admission of prior possession with the intent to distribute arrest in possession with the intent to distribute case). In the instant case, the proffered evidence bears a close relationship to the offense charged: it occurred close in time (several months) to the charged offense, involves the same vehicle as the one in this case, bears directly on at least one co-defendant's intent to commit the charged offense, and would be offered only to rebut a contention that the possession of the $2000 recovered in this case was somehow legitimate.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney

By: _____
        Jeff Pearlman
        DC Bar 466901
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 353-2385
        jeffrey.pearlman@usdoj.gov

# Exhibit A

 




U.S. Department of Justice
U.S. Attorney's Office, District of Columbia
Criminal Investigations Unit

# MEMORANDUM OF INVESTIGATION

| Case Number: | Reporting Office: |
|---|---|
| Draft Copy | USAO-DC |

Reference: Vehicle Purchase by Kevin Quattlebaum

Date/Time Interviewed: November 19, 2007 @11:30 hrs.
Subject Interviewed: Mohammad Khaliq
Title: Senior Sales Consultant, Carmax
Interviewed By: CI Duncan Templeton
Location: Carmax office #25, 8800 Freestate Drive, Laurel, Maryland
Telephone: (301) 604-8560 – cell (703) 568-2644

MOHAMMAD KHALIQ, Senior Sales Consultant, Carmax, Laurel, Maryland, was advised of the identity of Duncan Templeton, Criminal Investigator of the United States Attorney's Office for the District of Columbia. The following documents provided by Carmax were reviewed with KHALIQ during the interview: 1) Kevin Quattlebaum Credit Application, undated & unsigned; 2) Kevin Quattlebaum Washington D.C. drivers license copy; 3) Kevin Quattlebaum Personal Reference Sheet; 4) Kevin Quattlebaum Auto Policy Change Request 5) Kevin Quattlebaum Buyers Order dated 4/3/07. KHALIQ was advised of the reason for the interview and volunteered the following information in substance and in part:

He was the primary Carmax salesperson handling the sale of a Ford F-150 to Kevin Quattlebaum on April 3, 2007. At the time of the purchase, QUATTLEBAUM was accompanied by a white female, about 36-38 years of age, thin build, and with blondish hair. He showed QUATTLEBAUM several different trucks and QUATTLEBAUM picked the Ford F-150 as the vehicle he wanted to purchase. The sale went very quickly and QUATTLEBAUM declined to test drive the vehicle before purchasing. QUATTLEBAUM provided information to KHALIQ for the completion of the Carmax buyers order and other related sales and financing documents. QUATTLEBAUM applied for financing with several different companies through Carmax. QUATTLEBAUM was denied financing through the primary lenders and accepted for financing through one of the secondary lenders. In addition to obtaining financing, QUATTLEBAUM used a trade in vehicle and $9,000 in United States currency to complete the transaction. The trade in vehicle was a dark color Chevy Suburban that was dirty and beat up. QUATTLEBAUM offered KHALIQ the $9,000 in U.S. currency from a brown paper bag in his possession. The currency inside the bag was not organized. QUATTLEBAUM offered KHALID a $200 tip which KHALIQ declined to accept because it was against Carmax policy to do so. KHALIQ directed QUATTLEBAUM to the cashier to complete the purchase by providing U.S. currency from the paper bag. The following day QUATTLEBAUM arrived at Carmax to provide the original title to the Suburban that he had traded in. DRAFT COPY

| Investigator Name/Signature | Date: 11/21/07 |
|---|---|

*This report is the property of the United States Attorney's Office, Washington, DC and is loaned to your agency; it and its contents may not be reproduced without written permission. The report is **FOR OFFICIAL USE ONLY** and its disclosure to unauthorized persons is prohibited. Public availability to be determined by 5 U.S.C. 552.*

| DMS Tracking #: 1462746 | Reprint #: 0 | | | Printed 04/03/2007 03:42 pm  1 of 1 | | |
|---|---|---|---|---|---|---|

KEVIN QUATTLEBAUM
Purchaser/Buyer #1

Purchaser/Buyer #2

1847 L NE ST
Home Address

WASHINGTON, DC 20002-3023
City                State          Zip

(202) 399-3164           (202) 277-2374
Home Phone              Work Phone

**VEHICLE PURCHASE:**
☐ New     ☒ Used     ☐ Demonstrator

| Make | Body Type | Model |
|---|---|---|
| FORD | 4D EXTENDED CAB | F150 |
| Vehicle ID Number | Year | Mileage |
| 1FTPW14565FB74699 | 2005 | 13,364 |
| Stock Number | | Color |
| 4185567 | | BLACK |

Unless otherwise indicated, the odometer mileage listed on the Odometer Disclosure Statement on the reverse side of the title (or in a separate Odometer Disclosure Statement) to the vehicle transferred to Purchaser hereunder is based on the best knowledge and belief of CarMax, and Purchaser agrees that CarMax shall have no liability to Purchaser under this agreement or otherwise if the odometer is determined to be inaccurate for reasons beyond the control of, and without the actual knowledge of CarMax.

**NO LIABILITY INSURANCE INCLUDED**
Purchaser's Insurance Company: NATIONWIDE
RICKY                           (301) 474-4111
Agent's Name                    Phone Number

Address         City        State       Zip

TRADE-IN INFORMATION (Vehicle sold to CarMax)

| Make | Body Type | Model |
|---|---|---|
| CHEVROLET | 4D SPORT UTILITY | SUBURBAN |
| Vehicle ID Number | Year | Mileage |
| 3GNFK16Z72G273989 | 2002 | 102440 |
| Make | Body Type | Model |
| | | |
| Vehicle ID Number | Year | Mileage |

The Carmax Warranty Brochure, by this reference, is made a part of this contract. Please read it in its entirety because it contains the details of the Limited Warranty.
LIMITATION OF WARRANTIES: CARMAX MAKES NO EXPRESS WARRANTIES UNLESS SEPARATELY SET FORTH IN WRITING. ANY AND ALL IMPLIED WARRANTIES APPLICABLE TO THE PRODUCTS SOLD HEREUNDER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THE WRITTEN LIMITED WARRANTY GIVEN BY CARMAX, IF ANY.
To the extent allowed by applicable law, Carmax shall not be liable for any damages relating to loss of use of the products, loss of time, inconvenience or commercial loss, or any other incidental or consequential damages. Any and all warranties are extended only to the original purchaser.
SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR EXCLUSION OR LIMITATIONS ON RELIEF SUCH AS INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU ALSO MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**BUYER'S ORDER — CarMax**

| | | |
|---|---|---|
| 1) Base Price of Vehicle  ☒ CarMax  ☐ ValuMax  ☐ New | 1) $ | 28,998.00 |
| 2) Accessories (see Accessories Addendum attached hereto and made a part hereof) | 2) $ | 0.00 |
| 3) Extended Service Agreement SVC POLICY 60 MTHS/60K  ☒ Maxcare  ☐ ValuServ  ☐ Manuf | 3) $ | 1,399.00 |
| 4) Credit Life, Involuntary Unemployment Insurance | 4) $ | 0.00 |
| 5) Total Vehicle Balance | 5) $ | 30,397.00 |
| 6) Total "Trade-In" Value                 $  9,500.00  Cash Delivered to Purchaser      $     0.00  Total Amount not Applied to Purchase  $     0.00  Applied Equity from "Trade-In" | 6) $ | 9,500.00 |
| 7) Total Balance Due (5-6) | 7) $ | 20,897.00 |
| 8) Other Charges:  Lien Fee                         $    20.00  Title and Registration Fees      $   221.00  Excise Tax                       $ 2,319.84  N/A                              $   N/A  N/A                              $   N/A  N/A                              $   N/A  N/A                              $   N/A  Dealer Processing Charge         $    99.00 | 8) $ | 2,659.84 |
| 9) Discharge of Lien  TO  N/A | 9) $ | 0.00 |
| 10) Total Selling Price (7+8+9) | 10) $ | 23,556.84 |
| 11) Downpayment | 11) $ | 9,000.00 |
| 12) Incentives and Rebates  N/A         $ N/A  N/A         $ N/A  N/A         $ N/A | 12) $ | 0.00 |
| 13) BALANCE DUE AT SETTLEMENT (10-11-12) | 13) $ | 14,556.84 |
| ☐ Cash Sale  ☒ Financed  ☐ Lease  If applicable, Finance Company Name WACHOVIA DEALER SERVICES | | |

**Dealer processing charge (not required by law): $99.**
**Freight Charge: $0 (included in price).**

I have decided not to purchase extended service coverage for my vehicle at this time.      _____
                                                              Purchaser Initial

☐ If this box is marked, this vehicle has been previously used for a purpose other than a consumer good. The vehicle has been used as follows:

_____
                                             Purchaser's Initials

IF THIS AGREEMENT IS FOR A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**PLEASE READ THE BACK OF THIS FORM. IT CONTAINS TERMS THAT ARE PART OF THIS BUYERS ORDER THAT AFFECT YOUR PURCHASE.**

By executing this Order, Purchaser acknowledges he has read front and back and agrees to be bound by all of its terms and has received a fully completed copy. Purchaser certifies he/she is 18 years of age or older.

_[signature]_                       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           _[signature]_
Purchaser #1 Signature    Date     Social Security Number    Purchaser #2 Signature         Social Security Number

This order is not valid unless signed and accepted by an authorized representative of the Dealership.

Mohammad Khaliq      4/3/07                                  _[signature]_
Salesperson           Date                                   Authorized Representative of Dealership

05/03                                   www.carmax.com                                        PFF472

# CarMax®

| | | | |
|---|---|---|---|
| Associate: | ZEE | Print Date: | 11/19/07 12:30:06 |
| Category: | CUSTOMER DEPOSIT | Location: | CARMAX - LAUREL 7118 |
| Customer: | KEVIN QUATTLEBAUM | | |
| | 1847 L NE ST | Order Num: | 1461200 |
| | WASHINGTON, DC  20002 | Stock Num: | 4185567 |

CASH                                             Amount:    $9,000.00

                                                 Total:     $9,000.00